IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| J.K.R., a minor, by and through his father, JOSEPH REESE, and his mother, WENDY REESE and G.S.T., a minor, by and through his father, JEFFREY THRONEBERRY and his mother TIFFANY THRONEBERRY,<br>Plaintiffs,<br><br>v.<br><br>WILSON COUNTY SCHOOL DISTRICT and DONNA WRIGHT, individually and in her official capacity as Director of Schools for Wilson County School District<br>Defendants. | Civ. No. _____ |

## **VERIFIED COMPLAINT**

### INTRODUCTION

Public school students "do not shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 506 (1969). The U.S. Supreme Court reasoned that such rights must be considered "in light of the special circumstances of the school environment." *Id.* On School grounds then, students possess freedom of speech but oftentimes school officials receive deference for their disciplinary decisions in order to foster an environment conducive to learning. In *Tinker's* parlance, public school officials cannot punish students for speech within the schoolhouse gate unless they can reasonably forecast that such speech will cause a substantial disruption of school activities.

But, the arm of school authority has limits and should not extend or intrude into the private homes of students. Students' behavior at home should be governed by parental, not school, authority.

Importantly, our public education institutions do not function "without boundaries and the reach of school authorities is not without limits." *Layshock ex rel. Layshock v. Hermitage School District,* 650 F.3d 205, 216 (3d Cir. 2011). This limitation is foundational and necessary in a free society that tolerates a significant amount of speech that is offensive, disagreeable, and even repugnant. Without this necessary limitation on their authority, schools and their officials can, in essence, act as the thought police, regulating student speech with the threat of punishment no matter where or when it is made. And, as Justice Thurgood Marshall wrote years ago, "[o]ur whole constitutional heritage rebels at the thought of giving government the power to control men's minds." *Stanley v. Georgia,* 394 U.S. 557, 565 (1969).

This First Amendment case arises out of the Wilson County School District's breathtakingly broad extension of its authority to punish two high school students for purely off-campus, online expression that these students never distributed at school. The students on their own time created a single video recording- that school officials, using an astonishingly overbroad and vague barometer, characterized as "derogatory", profane, and included an "ethnophaulism involving African Americans". But for the sharing of the video with one individual, the two students herein not only did not disseminate the video at school, but they did not disseminate the video at all. Rather, a third party not involved in this matter, personally and through her own "Snapchat" application, distributed the video to individuals in the community.

Plaintiffs bring this action not only for money damages, but also for a declaration that the acts of the Defendants were unconstitutional and violate clearly established laws; for a complete expungement of any reference to the punishment and any events related to those actions, from Plaintiffs' transcript and complete student records and file; for changes to the code of conduct for the School District so that no other students are punished for engaging in non-school related and

2

off-campus free speech; for injunctive relief; and for an award of Plaintiffs' reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

1. This action seeks to vindicate rights protected by the First and Fourteenth Amendments to the United States Constitution, and is brought under 42 U.S.C. § 1983. This Court has jurisdiction over this civil rights action under 28 U.S.C. §§ 1331 and 1343. This Court also has jurisdiction under 28 U.S.C. §§ 2201 and 2202 to declare the rights of the parties and to grant all further relief found necessary and proper.

2. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. §1391(a) because the defendant is subject to personal jurisdiction within the Middle District of Tennessee and the events that give rise to this action occurred within the Middle District of Tennessee.

## PARTIES

3. Plaintiff J.K.R. is a fourteen (14) year old student in the Wilson County School District and attends high school at Mount Juliet High School ("MJHS"). J.K.R. lives with his parents in Lebanon, Tennessee.

4. Plaintiff Joseph Reese is J.K.R.'s father. Mr. Reese brings this action on behalf of his minor son, J.K.R.

5. Plaintiff Wendy Reese is J.K.R.'s mother. Mrs. Reese brings this action on behalf of her minor son, J.K.R.

6. Plaintiff G.S.T is a fifteen (15) year old student in the Wilson County School District and attends high school at MJHS. G.S.T. lives with his parents in Mount Juliet, Tennessee.

3

7. Plaintiff Jeffrey Throneberry is G.S.T.'s father. Mr. Throneberry brings this action on behalf of his minor son, G.S.T.

8. Plaintiff Tiffany Throneberry is G.S.T.'s mother. Mrs. Throneberry brings this action on behalf of her minor son, G.S.T.

9. Defendant Wilson County School District (the "District") is a political subdivision of the State of Tennessee located in Wilson County.

10. The District maintains it administrative offices at 415 Harding Drive, Lebanon, Tennessee 37087.

11. Dr. Donna Wright is the Director of Schools for the District and can be served with process at 415 Harding Drive, Lebanon, Tennessee 37087.

**FACTS**

12. Both J.K.R. and G.S.T. are tenth grade students at the MJHS.

13. J.K.R. and G.S.T. are both honors students.

14. J.K.R. began playing baseball when he was four (4) years old. He began playing football this year when he joined the varsity football team. J.K.R. is also on the varsity baseball team for MJHS.

15. G.S.T. started playing football at four (4) years of age. He played on the varsity football team as a freshman and is on the varsity team once again as a sophomore.

16. Trey Perry ("Coach Perry") is the Head Football Coach for MJHS.

17. As Head Football Coach, Coach Perry reports to the Athletic Director, Mike Duncan and to the Director of Schools, Dr. Donna Wright.

18. The varsity football, basketball and baseball teams are active throughout the year, including the summer.

4

19. During the season, players on the team practice daily during the week and have games at least once per week.

20. The MJHS Football team began practicing for the upcoming 2020-2021 season on May 21st of this year.

### *District Code of Conduct*

21. The District created a Code of Conduct ("Code") governing members of the Student Body to create a "safe and positive learning environment".

22. This Code applies "during the school day, during any school-related activity (on or off campus), at school bus stops, during transportation to and from school, or while being transported to or from a school-related activity."

23. The Code "can also apply to any act that takes place off of school property or outside of a school-sponsored activity if: (1) it is directed specifically at another student(s), (2) is threatening to the school's learning environment, or (3) is felonious, and creates a substantial disruption to the educational environment."

24. The Code subdivides punishable offenses into five separate categories.

25. It also defines the potential ramifications for a student who is found to have committed an offense in accordance with the category the offense falls under.

26. Category 3 offenses, in particular, targets acts directed against persons or property, including but not limited to harassment and distributing inappropriate picture(s) or video(s) of other students.

27. The Code authorizes the School Administrator to impose, on a student, one or more of the following forms of punishment for the commission of a Category 3:

a. Detention or other extended school time options;
b. Revocation of Parking Privilege;
c. Restitution from loss, damage, or stolen property; and
d. Short-term Suspension (5 days or less).

28. Harassment is defined by the Code as "any actions or statements made with the intent to harass, annoy, or alarm another person which: insults, taunts, or challenges the other person or; is a cause of alarming or distressing conduct which serves no legitimate purpose and is done in a manner which the actor knows is likely to provoke or cause a reasonable person to suffer fear, alarm or distress."

### *J.K.R. and KSG Video*

29. On March 16th, 2020, Tennessee Governor Bill Lee recommended that all schools be closed due to the spread of COVID-19.

30. On April 15th 2020, Governor Lee directed all public schools in Tennessee to remain closed for the remainder of the 2019-2020 academic year.

31. On or about Monday, April 13, 2020, J.K.R. and KSG created a short, approximately 5 second video featuring the two young men sitting on a couch and uttering a few racial slurs.

32. The video was shared via Snap Chat to one other individual, also a minor.

33. This video did not mention the school, any individuals by name or display any school uniforms or other school-related symbols or insignia.

34. The offensive language was not directed at any specific individuals and was not designed to harass anyone.

35. The video was taken at the home of one of the boys.

36. It was recorded when neither of the boys were participating in school or any other school related activity.

6

37. It was not distributed to or accessible by the general public, including the student body and did not cause a substantial disruption of or material interference with school activities.

38. Snap chat deletes all "Snaps" sent to an individual immediately after being viewed. Therefore, the Snap created by the boys disappeared immediately after it was viewed (as far as they knew).

39. However, nearly two months later, a third party who, upon information and belief, was a friend with the recipient of the video, posted a recording of the video to her Snap Chat.

40. The posting of the mirrored image by this third party, referred to as A.B. resulted in a distribution to other students.

41. J.K.R. and G.S.T. did not access or share the video at school.

42. J.K.R. and G.S.T. used no school resources to create the video.

43. J.K.R. and G.S.T. used no school time to create the video.

### *J.K.R. and G.S.T. Suspension from All Athletic Participation*

44. On June 5th, 2020, Coach Perry spoke with J.K.R. and G.S.T. about the video in a meeting.

45. As a result of this discussion, Coach Perry determined that the appropriate sanction for the video was to prohibit J.K.R. and G.S.T. from participating in practice with the football team for four (4) weeks, they forfeited their position on the depth chart, were required to participate in multiple counseling sessions, lost their position on the leadership council, and were prohibited from engaging in social media for an indefinite period of time.

46. In addition, Coach Perry brought in a motivational speaker who made a presentation to the entire football team and addressed racial issues and the effects of racism with the team.

7

47. On June 9th, 2020 District officials conducted an "interview" by telephone with G.S.T. about the aforementioned video. G.S.T. was allegedly permitted the opportunity to respond to allegations made by the District.

48. A day later, on June 10th, 2020 District officials also conducted an "interview" by telephone with J.K.R. about the video. He was also allegedly permitted the opportunity to respond to allegations made by the District.

49. A week later, on June 17th, 2020, J.K.R.'s parents met with school officials, wherein the District informed the minor of its decision, as determined by Defendant Donna Wright, to suspend him from participating in any extracurricular activities during the 2020-21 school year.

50. Also, on June 17th, 2020, the District informed G.S.T. and his parents of its decision, as Determined by Defendant Donna Wright to institute the same suspension for G.S.T. in a separate meeting.

51. On the day of G.S.T.'s meeting, Plaintiff Mrs. Throneberry verbally requested an appeal of the decision rendered by school officials. She was told to contact Ms. Lauren Bush, the Deputy Director of Policy and Student Services to request an appeal. She further requested the District provide her with the findings of its investigation and which policy it was relying upon to issue the punishment.

52. On June 17th, 2020, Mrs. Throneberry sent, via email, a request for an appeal to Ms. Bush.

53. Ms. Bush responded that same date writing, "[b]ecause there was derogatory language and racial slurs contained in [the] video, we also had to investigate under Title VI because we have an obligation as a school district to address any peer-to-peer racial harassment that is sufficiently serious as to create a hostile environment."

54. Ms. Bush further stated that she would be in touch with the final disposition in the case.

55. On June 19th, 2020 Ms. Bush sent a second email to Plaintiff Mrs. Throneberry requesting several dates the parties would be available for a virtual meeting.

56. Ms. Bush sent a third email on June 21st, 2020 apologizing for confusion and stated that because the discipline involved sanctioning participation in extracurricular activity, neither J.K.R. nor G.S.T. were entitled to any appellate process regarding the decision.

57. Counsel for J.K.R. and G.S.T. sent a letter to the District and Ms. Bush on June 23rd, 2020, requesting a formal hearing and if the "interviews" were considered by the District to be formal meetings, an appeal of the decision.

58. Counsel received a letter from Ms. Bush on or about June 30th, 2020.

59. In the letter, Ms. Bush once again denied the request for a formal hearing and appeal providing that J.K.R. and G.S.T. were provided due process in the investigation and institution of punishment but were not entitled to an appeal because the sanction levied involved an extracurricular activity.

60. On July 17, 2020, Counsel reached out to Ms. Bush a second time to requesting to have an informal meeting and discuss potential alternative remedies in lieu of prohibiting the students from participating in extracurriculars.

61. Approximately one hour before the scheduled meeting was to take place, Counsel for the students received an email from Ms. Bush canceling the meeting and reporting that the District stands by its decision.

*Selective Enforcement*

62. A third party, also a minor, identified herein as J.B. attends school in the Wilson County School District.

63. J.B. participates on a varsity football team and uses social media as well.

64. On July 27th, 2019, J.B. posted to his Facebook a picture of he and his teammates, in uniforms bearing the school name, taken on school grounds.

65. J.B. captioned the photo "Right Game Wrong N****" and posted it publicly.

66. As of the date of this filing, neither the District or school officials have taken any corrective action or issued any punishment for J.B.'s "ethnophaulism involving African Americans."

### *Harm to J.K.R. and G.S.T.*

67. J.K.R. has dedicated much of his youth to participation in sports, including baseball, basketball and football.

68. G.S.T. has also dedicated much of his youth to participation in sports, including baseball, basketball and football.

69. Both J.K.R. and G.S.T. excel as student athletes having made the varsity team in multiple sports as underclassmen.

70. When accepting applicants into their institutions, colleges not only look at academic excellence but also examine an individual's participation in extracurricular activities.

71. As a result of being suspended for one year from participating in extracurricular activities, J.K.R. and G.S.T.'s ability to be admitted into colleges may be impaired or harmed.

72. Continuous involvement, without interruption, in extracurricular activities and sports comes with significant benefits for the student as well.

73. Participation in sports educates individuals in team work, reduces the likelihood of drug and alcohol abuse compared to that of individuals who do not participate in extracurricular activities and helps individuals develop mental and physical strength.

74. J.K.R. and G.S.T. want and look forward to participating in sports and miss the comradery with their teammates.

75. Their suspension and exclusion from participation in extracurricular activities constitute immediate and irreparable harm for which no adequate remedy through monetary damages exists.

## CLAIMS

**Count I: The District's Punishment of Plaintiffs Violates the First Amendment to the United States Constitution and 42 U.S.C. § 1983.**

76. The District's prohibition precluding J.K.R. and G.S.T. from participation in extracurricular activities for the 2020-21 school year for their out-of-school speech violates the First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

**Count II: The Refusal to Afford J.K.R. and G.S.T. a Formal Hearing and an Appeal of any Sanction Instituted, Violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.**

77. The District refused to provide J.K.R. and G.S.T. with a formal hearing of their actions and the offenses their actions allegedly constituted, as well as any opportunity to appeal any adverse decision in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**Count III: The District's lack of Notice to its Students that Punishment for Sanctionable Offenses Could Include the Suspension of Participation in Extracurricular Activities, Violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.**

78. The District provided no notice, constructive or otherwise, to its students, including J.K.R. and G.S.T., that sanctions for prohibited offenses would include suspension from extracurricular activities for an entire year, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**Count IV: The District's Code of Conduct, On its Face, Violates the First Amendment to the United States Constitution and 42 U.S.C. §1983.**

79. The District's Code of Conduct is unconstitutional on its face because the Classification of offenses and definitions of actions that constitute offenses are overbroad and constitute viewpoint discrimination, in violation of the First Amendment to the United States Constitution.

**Count V: The District's Code of Conduct, On its Face, Violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.**

80. The District's Code of Conduct are unconstitutional on their face because they are unduly vague, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**Count VI: The District's Selective Enforcement of its Code of Conduct Violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.**

81. The District's actions in suspending two Caucasian students for using offensive and inappropriate language, while ignoring an African American's use of that same language amounts to a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

# PRAYERS FOR RELIEF

WHEREFORE, the Plaintiffs respectfully requests that this Court provide the following relief:

1. Declare the District's disciplinary action against J.K.R. and G.S.T., for their out-of-school, off-campus speech, a violation of J.K.R. and G.S.T.'s rights under the First and Fourteenth Amendments to the United States Constitution;

2. Declare that the District's refusal to provide a formal hearing and an appeal from any adverse decision to violate J.K.R. and G.S.T.'s rights to Due Process under the Fourteenth Amendment to the United States Constitution;

3. Declare that the District's implementation of punishment without providing its students notice of its possibility a violation of J.K.R. and G.S.T.'s rights to Due Process under the Fourteenth Amendment to the United States Constitution;

4. Enjoin the District from any continuing punishment or sanction against J.K.R. or G.S.T. on account of their constitutionally protected speech, including reinstating J.K.R. and G.S.T. to the football team and expunging all records and references to the incident from their educational record;

5. Award Plaintiffs damages in an amount to be determined at trial;

6. Award Plaintiffs costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

7. For such other further and general relief that this Honorable Court deems just and proper.

Respectfully submitted,

/s/ G. Jeff Cherry
_____

**G. Jeff Cherry, (TN BPR# 021421)**
**Christopher Beauchamp (TN BPR# 034569)**
**David L. Hudson, Jr. (TN BPR # 016742)**
*Counsel for Plaintiffs*
150 Public Square
Lebanon, Tennessee 37087
615-444-7222
jcherry@lowerylaw.com
cbeauchamp@lowerylaw.com
davidlhudsonjr@gmail.com

## VERIFICATION

I, J.K.R., hereby affirm under the penalties of perjury:

1. I am a minor (under eighteen (18) years of age).
2. My parents are Joseph and Wendy Reese.
3. I am a Plaintiff in this lawsuit.
4. I have read the factual allegations in the foregoing Verified Complaint.
5. The factual allegations are, to the best of my knowledge and belief, true and correct.

Dated: July 17, 20

_____
J.K.R. Signature

## VERIFICATION

I, Joseph Reese hereby affirm under the penalties of perjury:

1. I am over the age of eighteen (18) and competent to testify.
2. I am the parent of J.K.R., one of the minor Plaintiffs identified in the foregoing Verified Complaint.
3. I have read the factual allegations in the foregoing Verified Complaint.
5. The factual allegations are, to the best of my knowledge and belief, true and correct.

Dated: July 17, 20

_____
Joseph Reese

14

## VERIFICATION

I, Wendy Reese hereby affirm under the penalties of perjury:

1. I am over the age of eighteen (18) and competent to testify.
2. I am the parent of J.K.R., one of the minor Plaintiffs identified in the foregoing Verified Complaint.
3. I have read the factual allegations in the foregoing Verified Complaint.
5. The factual allegations are, to the best of my knowledge and belief, true and correct.

Dated: July 17th 2020

_Wendy Reese_
Wendy Reese

## VERIFICATION

I, G.S.T., hereby affirm under the penalties of perjury:

1. I am a minor (under eighteen (18) years of age).
2. My parents are Jeffrey and Tiffany Throneberry.
3. I am a Plaintiff in this lawsuit.
4. I have read the factual allegations in the foregoing Verified Complaint.
5. The factual allegations are, to the best of my knowledge and belief, true and correct.

Dated: 7/19/20

_G.S.T._
G.S.T. Signature

## VERIFICATION

I, Jeffrey Throneberry hereby affirm under the penalties of perjury:

1. I am over the age of eighteen (18) and competent to testify.
2. I am the parent of G.S.T. one of the minor Plaintiffs identified in the foregoing Verified Complaint.
3. I have read the factual allegations in the foregoing Verified Complaint.
5. The factual allegations are, to the best of my knowledge and belief, true and correct.

Dated: 7/14/20

_____
Jeffrey Throneberry

## VERIFICATION

I, Tiffany Throneberry, hereby affirm under the penalties of perjury:

1. I am over the age of eighteen (18) and competent to testify.
2. I am the parent of G.S.T., one of the minor Plaintiffs identified in the foregoing Verified Complaint.
3. I have read the factual allegations in the foregoing Verified Complaint.
5. The factual allegations are, to the best of my knowledge and belief, true and correct.

Dated: 7-14-20

_____
Tiffany Throneberry